UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


JAMES JOHNSON

                                    CIVIL ACTION

VERSUS

                                    NUMBER 05-908-RET-SCR

JE MERIT CONSTRUCTORS, INC.

<u>**NOTICE**</u>

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. §636(b)(1), you have ten days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein.  Failure to file written objections to the proposed findings, conclusions and recommendations within ten days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Baton Rouge, Louisiana, September 26, 2007.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


JAMES JOHNSON

CIVIL ACTION

VERSUS

NUMBER 05-908-RET-SCR

JE MERIT CONSTRUCTORS, INC.

**MAGISTRATE JUDGE'S REPORT**

Before the court is the Motion for Summary Judgment filed by defendant JE Merit Constructors, Inc.  Record document number 21. The motion is opposed by the plaintiff James Johnson.[1]  Defendant also filed a Supplemental Motion for Summary Judgment.  Record document number 37.  Plaintiff filed an opposition to the supplemental motion.[2]

Plaintiff filed this action alleging race discrimination and retaliation under Title VII[3], 42 U.S.C. § 1981, the Louisiana Employment Discrimination Law (LEDL),[4] and the Louisiana whistleblower law.[5]  Plaintiff is African-American and has worked for the defendant as a pipefitter in various positions since June 1986.  For the last ten years the plaintiff has been employed by

---

[1] Record document number 27.  Defendant also filed a reply memorandum.  Record document number 34.

[2] Record document number 44.

[3] 42 U.S.C. §§ 2000e-2 and 2000e-3.

[4] LSA-R.S. 23:332.

[5] LSA-R.S. 23:967.

the defendant at the Dow Chemical plant in Plaquemine, Louisiana.

Plaintiff specifically alleged that:

– he was discriminatorily demoted from a permanent foreman position in 2002, replaced by less experienced white employees, and was thereafter denied foreman positions that the defendant filled with less experienced white employees;

– after he complained about his demotion to two of his supervisors,[6] he was disciplined for a work incident and the white employees involved did not receive any disciplinary action;

– he was denied or told that he was not eligible to work overtime, whereas white employees who were similarly situated to him were allowed to work overtime;

– he was discriminatorily denied his field certification card and initially told that he would have to retake the test to obtain the card.

– beginning in late 2002, after he began complaining to his supervisors that their decisions regarding his employment were based on race, he was subjected to various retaliatory actions including denial of promotions and overtime, disparate discipline for a work violation, denial of a craftsman retention incentive, denial of a pager and a key to the

_____

[6] Plaintiff stated that the supervisors he complained to were Brent Watts, defendant's site manager at that time, and another supervisor, Willie Lefever.  Plaintiff affidavit, ¶¶ 19, 23-26.

building where he worked, and denial of his field certification card for 15 months;

– he also claimed that contrary to company rules, for eight to ten months he was audited once a week by supervisor Paul Lewis, required to get a return to work clearance after a doctor's appointment, and forced to eat his lunch in a building other than the one in which he worked.

Defendant asserted that all of the plaintiff's federal and state law discrimination claims should be dismissed because:

– several incidents of discrimination/retaliation the plaintiff complains about are not actionable because they were not included within the scope of his EEOC charge;

– any claims that arose more than 300 days before the plaintiff filed his EEOC charge on April 20, 2004, or more than 18 months prior to the filing of this action, are time-barred under Title VII and the LEDL;

– plaintiff cannot establish a prima facie case of race discrimination or retaliation, refute the defendant's legitimate, nondiscriminatory reasons, nor bear his ultimate burden of proving race discrimination or retaliation;

– plaintiff cannot establish a race-based hostile environment claim because the incidents which form the basis of this claim were not included in his complaint or EEOC charge, and even if they were, the alleged harassment was not severe or pervasive

enough to alter the terms and conditions of the plaintiff's employment.

In support of its motions the defendant submitted a statement of material facts not at issue[7] and relied on the following evidence: (1) the plaintiff's deposition and attached exhibits; (2) the affidavit of Harry Breeden;[8] (3) the affidavit and supplemental affidavit of Gaylon Landry;[9] (4) the affidavit of Debbie Mancuso,[10] and (5) the affidavit of Bryan Knost.[11]

---

[7] Record document number 23.

[8] Breeden is the defendant's director or Human Resources.  In connection with his duties and employment he is familiar with the plaintiff and the company's policies and procedures, and is the custodian of the company's personnel records.  Breeden affidavit, ¶ 1.

[9] Landry is employed by the defendant as Inventory Management Craft Supervisor at the Dow facility and has been in the position since October 2003.  Landry supervises the defendant's employees in the Leveraged Services Department which includes the Inventory Management Group and the Investment Recovery Group.  Inventory Management has three subgroups: the receiving group, the marshaling group and the material coordinators group.  Landry stated that the plaintiff is currently assigned to the hauling crew which is part of the receiving group and has been assigned to that group since November 2005.  According to Landry, the plaintiff was previously assigned to the Investment Recovery Group and occasionally still performs work with that group.  Landry affidavit, ¶ 1.

[10] Mancuso is employed by the defendant and held the position of Material Services Craft Supervisor at the Dow facility.  In June 2003 the plaintiff was assigned to the Leveraged Services Department, Investment Recovery Group, which Mancuso was supervising at the time.  Mancuso affidavit, ¶¶ 1-2.

[11] Knost stated that he is employed by the defendant as a Quality Manager, and in connection with his duties he is a custodian of and has access to personnel records.  Record document
(continued...)

4

Plaintiff opposed the arguments and evidence submitted by the defendant.  Plaintiff asserted that the defendant ignores his cause of action under § 1981 which has a four year statute of limitation. Therefore, his claims have not prescribed and are not barred because they do not appear in his EEOC charge.  Since the complaint in this case was filed on June 24, 2005, the plaintiff contended that his claims are timely under § 1981 to the extent that they arose on or after June 24, 2001.

Plaintiff also argued that there is sufficient evidence from which a jury could find that because of his race, he was demoted from his permanent foreman position, not promoted to vacant foreman positions and denied the opportunity to work overtime.  Plaintiff also maintained that he presented sufficient evidence to support his claim that he was subjected to retaliation after he complained to his supervisors about employment actions that were motivated by race discrimination.

In opposition to the defendant's motion the plaintiff submitted a statement of contested material facts, his own affidavit and an excerpt from his deposition,[12] and the affidavits of Kermit Harris, Adam Johnson, and Patrick Morris.

---

[11](...continued)
number 37, Knost affidavit, ¶ 1.

[12] Record document number 28.

5

**Applicable Law**

Summary judgment is only proper when the moving party, in a properly supported motion, demonstrates that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law.  Rule 56(c), Fed.R.Civ.P.; *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2510 (1986).  If the moving party carries its burden under Rule 56(c), the opposing party must direct the court's attention to specific evidence in the record which demonstrates that it can satisfy a reasonable jury that it is entitled to verdict in its favor.  *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512.  This burden is not satisfied by some metaphysical doubt as to the material facts, conclusory allegations, unsubstantiated assertions or only a scintilla of evidence.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  In resolving the motion the court must review all the evidence and the record taken as a whole in the light most favorable to the party opposing the motion, and draw all reasonable inferences in that party's favor.  *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.  The court may not make credibility findings, weigh the evidence, or resolve factual disputes.  *Id.*; *Reeves v. Sanderson Plumbing Prods.*, *Inc.*,  530 U.S. 133, 150, 120 S.Ct. 2097, 2110 (2000).

On summary judgment, evidence may be considered to the extent not based on hearsay or other information excludable at trial.

*Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir. 1995); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987).

The substantive law determines which facts are material. *Canady v. Bossier Parish School Bd.*, 240 F.3d 437, 439 (5th Cir. 2001).  In this case the court must apply the federal and state law applicable to race and retaliation claims under Title VII, § 1981 the LEDL, and the state whistleblower statute.

The well-established *McDonnell Douglas*[13] framework is applied to consideration of disparate treatment claims brought under both the federal and state statutes.[14]  To establish a prima facie case of discrimination, a plaintiff must demonstrate that he is:  (1) a member of a protected class; (2) qualified for the position, (3) suffered an adverse employment action, and (4) was replaced by someone outside of the protected class, or that others outside of the protected group and similarly situated were treated more

---

[13] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973).

[14] *See*, *Reeves*, 530 U.S. at 141-42, 120 S.Ct. at 2105-06; *Smith v. City of Jackson, Mississippi*, 351 F.3d 183, 196 (5th Cir. 2003). State law race discrimination, retaliation and whistleblower claims are decided by the same principles that govern Title VII claims.  *Williams v. Sterling Healthcare Services, Inc.*, 193 Fed.Appx. 328 (5th Cir. 2006); *Blacher v. BASF* Corp., 177 F.3d 978 (5th Cir. 1999); *McCoy v. City of Shreveport*, 492 F.3d 551, 556, n. 4 (5th Cir. 2007).
The analysis of claims for discrimination under Title VII and § 1981 are identical, the only substantive differences between the two statutes being their respective statute of limitations and the requirement under Title VII that the employee exhaust administrative remedies.  *Jones v. Robinson Property Group, L.P.*, 427 F.3d 987, 992 (5th Cir. 2005).

favorably. *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 576 (5th Cir. 2003); *Okoye v. University of Texas Houston Health Science Center*, 245 F.3d 507 (5th Cir. 2001).

A plaintiff's prima facie case creates an inference of discrimination that shifts the burden of production to the defendant to come forward with evidence that the adverse employment action was taken for a legitimate, nondiscriminatory reason. The burden is one of production, not persuasion, and "can involve no credibility assessment." *Reeves*, 530 U.S. at 142, 120 S. Ct. at 2106, *citing*, *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509, 113 S.Ct. 2742, 2748 (1993); *Crawford v. Formosa Plastics Corp., La.*, 234 F.3d 899, 902 (5th Cir. 2000).

Once the employer articulates a legitimate nondiscriminatory reason and produces competent summary judgment evidence in support of it, the inference created by the prima facie case drops out of the picture. *Russell v. McKinney Hospital Venture*, 235 F.3d 219, 222 (5th Cir. 2000). The *McDonnell Douglas* framework with its presumptions and burdens disappears, and the only remaining issue is discrimination vel non. The fact finder must decide the ultimate question of whether the plaintiff has proven intentional discrimination. *Id.; Reeves*, *supra*.

In *Reeves*, the Supreme Court addressed the evidentiary burden borne by plaintiffs attempting to prove intentional discrimination through indirect evidence under Rule 50 and Rule 56 of the Federal

Rules of Civil Procedure.  The Court specifically repudiated the "pretext-plus" approach.  *Russell*, 235 F.3d at 223.  Although *Reeves* addressed the sufficiency of the evidence under Rule 50, its principles apply in the "analogous context of summary judgment under Rule 56." *Reeves*, 120 S.Ct. at 2110; *Blow v. City of San Antonio, Texas*, 236 F.3d 293, 297, n.2 (5th Cir. 2001).

A plaintiff may attempt to establish that he was the victim of intentional discrimination by offering evidence that the employer's legitimate nondiscriminatory reason is unworthy of belief. The trier of fact may also consider the evidence establishing the plaintiff's prima facie case and inferences properly drawn from it, on the issue of whether the defendant's explanation is pretextual. *Reeves*, *supra*; *Russell*, 235 F.3d at 222-23.  Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated. *Reeves*, 120 S.Ct. at 2108-09; *Russell*, 235 F.3d at 223.

Whether summary judgment is appropriate in any particular case will depend on a number of factors including the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence relevant to the employer's motive. *Reeves*, 120 S.Ct. at 2109; *Crawford*, 234 F.3d at 902.  The ultimate determination in every

9

case is whether, viewing the evidence in the light most favorable to the plaintiff, a reasonable fact finder could infer discrimination. *Crawford*, *supra*.

As a result of the Supreme Court's decision in *Desert Palace v. Costa*, 539 U.S. 90, 123 S.Ct. 2148 (2003), the Fifth Circuit has developed a modified *McDonnell Douglas* approach under which a plaintiff relying on circumstantial evidence in support of his claim is not limited to demonstrating that the defendant's reason is pretextual and may alternatively establish that discriminatory animus was a motivating factor in an adverse employment decision. *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 351-352 (5th Cir. 2005), *citing*, *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 311 (5th Cir. 2004).

The parties' burdens under the modified *McDonnell Douglas* approach are as follows:

> [Plaintiff] must still demonstrate a prima facie case of discrimination; the defendant then must articulate a legitimate, non-discriminatory reason for its decision to terminate the plaintiff; and, if the defendant meets its burden of production, the plaintiff must then offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive alternative). If a plaintiff demonstrates that age was a motivating factor in the employment decision, it then falls to the defendant to prove that the same adverse employment decision would have been made regardless of discriminatory animus.

*Machinchick*, 398 F.3d at 352.

Therefore, in order to withstand summary judgment, using direct or circumstantial evidence, the plaintiff is required to present sufficient evidence for a reasonable jury to conclude that race was a motivating factor for the defendant's employment action. *Roberson v. Alltel Information Services*, 373 F.3d 647, 652 (5th Cir. 2004).

A plaintiff may also establish a violation of Title VII, § 1981 and the LEDL by proving that the workplace is permeated with discriminatory intimidation, ridicule and insult that is so severe or pervasive that it alters the conditions of employment and creates a hostile or abusive working environment. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 114 S.Ct. 367, 370 (1993); *Woods v. Delta Beverage Group, Inc.*, 274 F.3d 295, 298 (5th Cir. 2001); *Walker v. Thompson*, 214 F.3d 615, 625-26 (5th Cir. 2000). In order to establish a claim that discrimination has created an abusive or hostile working environment based on race, a plaintiff must prove the following four elements in cases where it is asserted that a supervisor with immediate or successively higher authority perpetrated the harassment: (1) that he belongs to a protected class; (2) that he was subjected to unwelcome harassment; (3) that the harassment was based on race, and (4) that the harassment affected a term, condition, or privilege of employment.

11

*Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999);[15] *Woods*,
*supra*, n. 2; *Hayatdavoudi v. University of Louisiana System Bd.*,
240 F.3d 1073 (5th Cir. 2000).  If the alleged harassment is
committed by a co-worker rather than a supervisor, the plaintiff
must also prove a fifth element, which is proof that his employer
knew or should have known of the harassment and failed to take
prompt remedial action.  *Watts*, *supra*, n. 3; *Hockman v. Westward
Communications, LLC*, 407 F.3d 317, 325 (5th Cir. 2004).[16]

For harassment to affect a term, condition or privilege of
employment it must be both objectively and subjectively abusive.
Whether a working environment is objectively hostile or abusive is
determined by considering the totality of the circumstances.
Courts look to: (1) the frequency of the discriminatory conduct;
(2) its severity; (3) whether it is physically threatening or
humiliating as opposed to a mere offensive utterance; (4) whether
it unreasonably interferes with an employee's work performance, and
(5) whether the conduct undermines the plaintiff's workplace
competence.  *Hockman*, 407 F.3d at 325-26; *Walker*, *supra*; *Harris*,
510 U.S. at 23, 114 S.Ct. at 371.

Not all harassment will affect the terms, conditions, or

---

[15] *Citing*, *Burlington, Ind. v. Ellerth*, 524 U.S. 742, 118 S.Ct.
2257 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 118
S.Ct. 2275 (1998).

[16] *Citing*, *Jones v. Flagship Int'l*, 793 F.2d 714, 719-20 (5th
Cir. 1986), *cert. denied*, 479 U.S. 1065, 107 S.Ct. 952 (1987).

privileges of employment.   The mere utterance of an offensive comment or remark which hurts an employee's feelings is not sufficient to affect the conditions of employment.  Simple teasing, offhand comments, and isolated incidents, unless they are extremely serious, are not sufficient to affect the terms, conditions or privileges of employment.  *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 2405 (1986).

A plaintiff establishes a prima facie case for unlawful retaliation under 42 U.S.C. § 2000e-3(a) and § 1981 by proving: (1) that he engaged in activity protected by Title VII or § 1981, (2) that an adverse employment action occurred, and (3) that a causal connection exists between the protected activity and the adverse employment action.  *Lemaire v. State of Louisiana*, 480 F.3d 383 (5th Cir. 2007); *Foley*, 355 F.3d at 339-340.

An employee has engaged in activity protected under Title VII's anti-retaliation provision if he has (1) opposed any practice made an unlawful employment practice by Title VII, or (2) made a charge, testified, assisted, or participated in any manner in a Title VII investigation, proceeding, or hearing.  *Grimes*, 102 F.3d at 140.  The opposition clause requires the employee to show that he had at least a reasonable belief that the practices he opposed were unlawful.  *Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir. 1996).  However, proof of an actual unlawful employment practice is not required to state a claim for unlawful retaliation.

*Id.*, at 309, n.10, *citing*, *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1137-41 (5th Cir. 1981).

Section 1981 protects against retaliation for opposition to race discrimination in the workplace. *Foley v. Univ. of Houston System*, 355 F.3d 333, 339 (5th Cir. 2003); *Swanson v. City of Bruce, Miss.*, 105 Fed.Appx. 540, 543 (5th Cir. 2004).

Title VII's retaliation provision is not limited to actions and harms that relate to employment or occur at the workplace. It covers employer actions materially adverse to a reasonable employee, that is, actions that well might have dissuaded a reasonable worker from making or supporting a charge of discrimination. *Burlington Northern & Santa Fe Railway Co. v. White*, ____ U.S. ____, 126 S.Ct. 2405, 2415 (2006). *Burlington* overruled Fifth Circuit precedent which limited actionable Title VII retaliatory conduct to ultimate employment decisions. *Burlington*, 126 S.Ct. at 2410.

There is nothing in the case law to indicate that the rationale and holding of *Burlington* would not also apply to retaliation claims under § 1981. Section 1981 retaliation cases prior to *Burlington* relied on Title VII jurisprudence which required ultimate employment decisions to satisfy the element of adverse employment action. *Foley*, 355 F.3d at 340.

The causal link required by the third prong of the prima facie case does not have to meet a "but for" standard. A plaintiff does

14

not have to prove that his protected activity was the sole factor motivating the employer's challenged actions in order to establish the causal link element of a prima facie case. *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002). Close timing between an employee's protected activity and an adverse action against the employee may provide the causal connection needed to make out a prima facie case of retaliation. However, once the employer offers a legitimate, nonretaliatory reason that explains both the adverse action and the timing, the plaintiff must offer some evidence from which the jury may infer that retaliation was the real motive. *McCoy*, 492 F.3d at 562.

If the plaintiff establishes a prima facie case of retaliation, the defendant must come forward with a legitimate, nondiscriminatory reason for its adverse employment action. Once the defendant advances its reason, the focus becomes the ultimate issue in a retaliation case, which is whether the employer retaliated against the employee for engaging in protected activity. Plaintiff is required to prove that the adverse employment action would not have occurred "but for" the protected activity. *Vadie v. Mississippi State University*, 218 F.3d 365, 374 (5th Cir. 2000); *Septimus* v. *University of Houston*, 399 F.3d 601, 608-09 (5th Cir. 2005). "Whether or not there were other reasons for the employer's actions, the employee will prevail only by proving that "but for" the protected activity she would not have been subjected to the

15

action of which she claims." *Jack v. Texaco Research Center*, 743 F.2d 1129, 1131 (5th Cir. 1984); *Strong v. University Health Care System, L.L.C.*, 482 F.3d 802, (5th Cir. 2007). Although not in itself conclusive, the timing of an employer's actions can be a significant factor in the court's analysis of a retaliation claim. *Gee*, 289 F.3d at n.3, *citing*, *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 44 (5th Cir. 1992).

In paragraph 4 of his complaint, the plaintiff also cited Louisiana's whistleblower statute. The statute, LSA-R.S. 23:967 provides in pertinent part:

> A. An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law:
>
> (1) Discloses or threatens to disclose a workplace act or practice that is in violation of state law.
>
> (2) Provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of law.
>
> (3) Objects to or refuses to participate in an employment act or practice that is in violation of law.

The statute also states: "Reprisal includes firing, layoff, loss of benefits, or any discriminatory action the court finds was taken as a result of an action by the employee that is protected" under the statute. LSA-R.S. 23:967(C)(1). An employee who suffers reprisal under the statute may bring a civil action against the employer for damages, reasonable attorney fees, and court costs. LSA-R.S. 23:967(B). While the Louisiana Supreme Court has not

16

interpreted this statute, it is the consensus thus far of the lower Louisiana courts that the employer must have committed an actual violation of state law. *Accardo v. Louisiana Services & Indem. Co.*, 2005-2377 (La.App. 1 Cir. 6/21/06), 943 So.2d 381; *Hale v. Touro Infirmary*, 2004-0003 (La.App. 4 Cir. 11/3/04), 886 So.2d 1210, *writ denied*, 2005-0103 (La. 3/24/05), 896 So.2d 1036; *Puig v. Greater New Orleans Expressway Comm'n*, 2000-924 (La.App. 5 Cir. 10/31/00), 772 So.2d 842, *writ denied*, 2000-3531 (La. 3/9/01), 786 So.2d 731.943

The standards governing claims under Louisiana's whistleblower statute and Title VII retaliation claims are materially indistinguishable. *Strong*, *supra*.

Different rules of prescription govern Title VII, § 1981 and the LEDL. Section 1981 employment discrimination claims that are based on conduct occurring after the formation of a contract have a four year statute of limitations. *Johnson v. Crown Enterprises, Inc.*, 398 F.3d 339, 341 (5th Cir. 2005). Whereas claims based on the failure to enter into a new contract are governed by the relevant state personal injury limitations period, which in Louisiana is the one year prescriptive period for tort actions. *Id.*; *Michel v. Saint-Gobain Containers, Inc.*, 2005 WL 3339568 (W.D. La. Dec. 8, 2005).[17]

---

[17] Such claims were viable under § 1981 before it was amended by the Civil Rights Act of 1991. Therefore, Louisiana's one year
(continued...)

Discrimination claims brought under the LEDL are also subject to a one year prescriptive period. LSA-R.S. § 23:303(D). This one year period commences from the day the injury or damage is sustained. *King v. Phelps, Dunbar, L.L.P.*, 1998-1805 (La. 6/4/99), 743 So.2d 181, 187. However, that period is "suspended during the pendency of any administrative review or investigation of the claim conducted by the federal Equal Employment Opportunity Commission or the Louisiana Commission on Human Rights." The suspension of the one year period cannot last longer than six months. *Id.; Singleton v. RPM Pizza, Inc.* 2004 WL 2216530, *3 (E.D. La., Sept. 30, 2004).

Title VII requires a plaintiff to file an EEOC charge within 300 days of the occurrence of an alleged discriminatory act. 42 U.S.C. § 2000e-5(e)(1).[18] An act occurs on the day it happens and a party must file his charge of discrimination within 300 days of the date of the act in order to recover for it. If a claim is not filed within the statutory time limitation the claim is time-barred. *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110, 122 S.Ct. 2601, 2070-71 (2002). Congress intended this period to act as a statute of limitations. *Webb v. Cardiothoracic Surgery*

---

[17](...continued)
limitations period applies to claims arising under the pre-1991 version of § 1981. *Smith v. Aaron's Inc.*, 325 F.Supp.2d 716, 723 (E.D. La. 2004).

[18] Louisiana is a deferral state. Therefore, the 300 day time period applies here. *Janmeja v. Board of Supervisors of Louisiana State*, 96 Fed.Appx. 212, 214 (5th Cir. 2004).

18

*Associates of North Texas, P.A.*, 139 F.3d 532, 537 (5th Cir. 1998). Thus, a plaintiff cannot sustain a claim based upon incidents that occur more than 300 days before the filing of the charge of discrimination. *Id*.

The filing of a charge of discrimination with the EEOC is a prerequisite to filing a Title VII action. *Young v. City of Houston*, 906 F.2d 177, 179 (5th Cir. 1990).[19] However, a cause of action under Title VII can be based not only upon the specific complaints made in the initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the charge of discrimination. *Fine v. GAF Chemical Corp.*, 995 F.2d 576, 578 (5th Cir. 1993). The actual scope of an EEOC investigation does not determine whether a claim is exhausted, but the investigation of a particular claim creates a strong inference that such a claim was presented. *See*, *Clark v. Kraft Foods, Inc.*, 18 F.3d 1278, 1280 (5th Cir. 1994).

## Analysis

### Title VII: Timeliness and Scope of the Charge

Defendant asserted that under Title VII's 300 day rule, the

---

[19] There is a disagreement in the Fifth Circuit as to whether a Title VII prerequisite, such as exhaustion, is merely a prerequisite to suit and subject to waiver or estoppel, or whether it is a requirement that implicates subject matter jurisdiction. *Pacheco v. Mineta*, 448 F.3d 783, 789 n. 7 (5th Cir. 2006).

plaintiff has no claim based on events that occurred prior to June 2003. Plaintiff did not rebut these arguments, but instead pointed out that § 1981 has a four year statute of limitations. Therefore, he argued, the claims alleged in the complaint have not prescribed. In its reply memorandum, the defendant did not dispute this point, but rather contended that to the extent the plaintiff was asserting claims that he was not promoted to foreman positions, those claims under § 1981 retain a pre-*Patterson* one year limitations period and are prescribed if they occurred before June 24, 2004.

Plaintiff filed his EEOC charge on April 20, 2004. Therefore, it is uncontested that any claimed discrimination/retaliation that occurred more than 300 days before the plaintiff filed his EEOC charge, which in this case would be before June 26, 2003, is time-barred under Title VII. A review of the complaint and the plaintiff's affidavit shows that several distinct events that form the basis of the plaintiff's claim for discrimination and retaliation occurred before June 26, 2003. Those employment actions are the alleged demotion that occurred on or about June 2002 and subsequent denial of another foreman position,[20] and the suspension for a work rules violation that occurred in November

---

[20] The exact timing of the demotion is unclear from the plaintiff's affidavit. However, the plaintiff stated in paragraph 17 that in June 2002 he was foreman over 15 pipefitters and laborers in LHC3, and in the next five paragraphs recounted his subsequent demotion to laborer in Poly-B block.

20

2002.[21]  Plaintiff also asserted that he was discriminatorily denied permanent block foreman positions in early 2003.  Therefore, to the extent that the plaintiff asserts a Title VII claim based on these events in 2002 and the first part of 2003 they are time-barred by the 300 day rule.

Defendant also asserted that some of the incidents of discrimination/retaliation the plaintiff alleged under Title VII are barred because they were not part of his EEOC charge filed on April 20, 2004.  The allegations that the defendant claimed are precluded are the plaintiff's complaints about a 2002 suspension for a work rules violation, denial of a salary incentive, having his paperwork audited, and being required to get medical clearance to return to work, questioned about his ability to operate a forklift, and required to eat in a certain location.

Again, any Title VII claim based on the November 2002 suspension is barred because it occurred more than 300 days before the plaintiff filed his EEOC charge.  However, based on the principle established in *Gupta v. East Texas State University*,[22] the remaining events that were not specifically mentioned in the EEOC charge, except for the August 2003 forklift incident, are not barred for failure to exhaust administrative remedies.

The EEOC charge filed on April 20, 2004 alleged that the dates

---

[21] Plaintiff affidavit, ¶ 25.

[22] 654 F.2d 411 (5th Cir. 1981).

21

the discrimination took place were from November 24, 2003 to April 16, 2004.  Questioning the plaintiff about his ability to operate the forklift in August 2003 and requiring him to retest was prior to the time period specified in the charge and would not have been within the scope of the EEOC investigation that could reasonably be expected to grow out of the charge of discrimination.

The other specific acts of discrimination the defendant asserted were not included in the charge of discrimination - denial of a salary incentive, having his paperwork audited, being required to get medical clearance to return to work, and being required to eat in a certain location - all allegedly occurred in 2005 and 2006 after the charge was filed.[23]  As the basis for the discrimination, the plaintiff clearly indicated that he was claiming discrimination based on age, race and retaliation.[24]  Under *Gupta,* the plaintiff is not required to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge.[25]  Therefore, the defendant has not established that it is entitled to summary judgment dismissing the plaintiff's Title VII claim based on

---

[23] Plaintiff affidavit, ¶¶ 74-77; plaintiff depo., pp. 176-81, 224-27, 261-74.

[24]   In the section of the form with boxes to check, the plaintiff placed an "X" in the blocks for race, retaliation and age, and the plaintiff also stated these three grounds in the third paragraph of the "PARTICULARS" section.

[25] *See also*, *Green v. Louisiana Casino Cruises, Inc.*, 319 F.Supp.2d 707, 710-11 (M.D. La. 2004); *Eberle v. Gonzales*, 2007 WL 1455928, *5 (5th Cir. 2007).

allegations that occurred after the filing of the plaintiff's EEOC charge.

**LEDL Prescription**

Defendant argued that any claims alleged by the plaintiff under the LEDL that occurred prior to December 2003 are time barred.  Plaintiff did not oppose this argument.  Plaintiff filed this action on June 24, 2005.  Therefore, any claimed discrimination/retaliation that occurred prior to December 24, 2003, i.e. more than 18 months before the plaintiff filed his complaint, is not viable under the LEDL.  The specific events that are prescribed under the LEDL are the alleged demotion that occurred on or about June 2002 and the subsequent denial of another foreman position,[26] the suspension for a work rules violation that occurred in November 2002, and the incident where the plaintiff was questioned about his ability to operate a forklift in August 2003.[27]

**Section 1981 Prescription**

With regard to the plaintiff's § 1981 claim, a review of the complaint and summary judgment evidence shows that the earliest acts of discrimination or retaliation alleged by the plaintiff began in February 2002.  This falls well within the four year

---

[26] Again, the exact timing of the demotion is unclear.  *See*, *supra*, footnote 23.

[27] Plaintiff depo., pp. 146-50; Mancuso affidavit, ¶ 10.

period before the plaintiff filed his complaint.  Therefore, the plaintiff's claims under § 1981 are not prescribed.

Under § 1981 a one year prescriptive period may be applicable if the claim is based on the failure to enter into a new contract. As to the plaintiff's allegations that he was denied promotions to foreman from 2002 to the present,[28] the defendant has not established as a matter of law that these claims should be subject to a one year prescriptive period.  Whether the one year period applies depends on an evaluation of the specific circumstances of the denied promotion to determine whether it would have constituted the formation of a new contract.  Prescription is an affirmative defense.  Defendant failed to present evidence which establishes that these denied promotion claims are prescribed under the one year statute of limitations applicable to pre-*Patterson* claims.

### Race Discrimination/Retaliation Under § 1981, Title VII, and State Law

A review of the complaint and the summary judgment record shows that the plaintiff alleges many nebulous and diverse race discrimination and retaliation claims based on conduct extending

---

[28] In his affidavit the plaintiff stated that during 2002 and 2003 he was denied foreman positions that he was qualified to fill that were given to less qualified white employees, and that through the date of the affidavit he continued to be "passed over" for foreman positions.  In his EEOC charge the plaintiff alleged that he was not selected for "several Foreman positions filled within the past 2 or 3 months."  EEOC Charge No. 270-2004-01454 dated April 20, 2004, plaintiff depo., exhibit 14.

24

from 2002 until early 2006.  Regardless of whether any particular incidents are prescribed or not exhausted under Title VII and the LEDL, the plaintiff's § 1981 cause of action encompasses all of the incidents and events on which the plaintiff bases his claims for discrimination and retaliation.  Therefore, all of the summary judgment evidence, with the exception of the evidence excluded by the ruling on the motion to strike,[29] must be reviewed in determining whether there is a genuine dispute for trial.[30]  This evidence is reviewed as a whole and viewed in the light most favorable to the plaintiff.

<u>Foreman Demotion/Promotion</u>

Beginning in 2002 and continuing to the present, the plaintiff asserted that he was demoted from a foreman position and not promoted to foreman positions because of his race.  Based on the evidence provided in his affidavit and deposition testimony and other statements included in the affidavits of Morris, Harris and Johnson,[31] the plaintiff asserted that various white employees with less experience and other black employees were made foreman.  The

---

[29] Record document number 32, Motion to Strike; record document number 45, Ruling on Motion to Strike.

[30] Since the defendant presented evidence of its legitimate, non-discriminatory reasons for all the employment actions the plaintiff complained of, it is unnecessary to separately analyze each element of the plaintiff's prima facie case.

[31] Harris affidavit, ¶¶ 3-5, 7-9, 14-20; Johnson affidavit, 11-12, 20-23; Morris affidavit, ¶¶ 5-8, 12-14.

undisputed facts, and the plaintiff's failure to come forward with sufficient evidence of disparate treatment, demonstrate that the defendant is entitled to summary judgment as to any claim that the plaintiff was demoted from or denied a foreman position because of his race.

Plaintiff was initially hired by the defendant in 1986 as a mechanic/pipefitter, and that he has been laid off and rehired a total of 23 times in the past 18 years.  For the last ten years the plaintiff has worked for the defendant at the Dow facility in Plaquemine as a pipefitter in different process units.  During his time at Dow, depending on the workload, the plaintiff has moved in and out of the lead man, foreman and mechanic-A positions.[32]

In the summer of 2003 the defendant reduced its number of employees at Dow.  Because of his many years of service with the defendant and at the request of Breeden, in June 2003 the plaintiff was offered an assignment to the Leveraged Services Department. This department encompasses the Investment Recovery Group and the Inventory Management Group.  These groups historically were a more stable environment where layoffs are less frequent.  Breeden attested to the fact that this offer was made to the plaintiff to avoid laying him off and to attempt to ensure that the plaintiff would be less susceptible to lay off in the future.  The incumbent

---

[32] *See*, Breeden affidavit, ¶ 3; Knost affidavit ¶ 2; Plaintiff affidavit ¶ 1, 5-7; Defendant Statement of Material Facts, ¶ 2, 5.

in the Leveraged Services position offered to the plaintiff was David Billedeaux, a white male, who had been laid off.  When the vacancy occurred, Dow determined that the position required only the skill level of a Class B or C mechanic.  However, at the request of Brent Watts, defendant's site superintendent, and Debbie Mancuso, Material Services Craft supervisor, Dow approved placing the plaintiff in the position as a Class A pipefitter and paying him at a Class A rate.  Plaintiff accepted the position.  Since moving into the position the plaintiff has declined opportunities to leave the department, and no foreman positions have been available in the Leveraged Services Department since the plaintiff started working there.[33]

Review of the summary judgment record shows that the only evidence that the plaintiff has to support this aspect of his race discrimination claim is his statements that he was replaced by various white male foreman in 2002-03, that white males were moved into foreman positions rather than him from 2003 to the present, and that in 2003 another employee named Marion Piper told the plaintiff that he felt the plaintiff was being moved because the plaintiff was old and black.[34]  However, the plaintiff offered no

---

[33] *See*, Breeden affidavit, ¶ 5-7; Landry affidavit, ¶ 1, 8, 9, 12; Landry supplemental affidavit, ¶ 5; Mancuso affidavit, ¶ 2, 5; Defendant Statement of Material Facts, ¶ 12-17; plaintiff depo., pp. 133, 174-75.

[34] Plaintiff depo., pp. 104-06.

specific facts to support his personal opinion that he was better qualified than the white male foreman he named, and no facts to show that Piper was related to or had authority over any employment decision that affected the plaintiff.[35]   Piper's personal opinion as to why the plaintiff was moved to another department is not relevant to the motive of the individuals who made the decision to transfer the plaintiff.   Plaintiff has only his years of experience as a pipefitter and his personal belief that he was more qualified to support this aspect of his claim.   This is plainly insufficient to create a genuine dispute for trial.[36]

Plaintiff's attempt to create a genuine factual dispute by presenting evidence disputing whether the position of permanent block foreman existed, or evidence disputing the current required skills to be a foreman, is unavailing.   In order to satisfy his burden on summary judgment the plaintiff must come forward with evidence from which a reasonable jury could conclude that he was clearly better qualified than the individuals who were made foreman.   Plaintiff's subjective beliefs and unsubstantiated assertions clearly fail to satisfy this standard.   Plaintiff did not come forward with any specific evidence about the position, or

---

[35] *See*, *Krystek v. University of Southern Mississippi*, 164 F.3d 251, 256 (5th Cir. 1999).

[36] Plaintiff's lack of specific evidence is demonstrated by: plaintiff affidavit, ¶¶ 9-24, 34, 62-63, 65-72, 79; plaintiff depo., pp. 28-39, 44-55, 78-80, 82, 102, 104-115, 117-20, 207, 230-36, 240-43, 247-49, 275-79, 286-89.

his qualifications relative to the individuals selected, which
would support a reasonable inference that he was clearly more
qualified.[37]   This failure, along with the failure to provide
specific evidence to dispute the defendant's nondiscriminatory
reason for moving the plaintiff to the Leveraged Services
Department,[38] demonstrates that there is no sufficient evidentiary
basis for a reasonable trier of fact to draw a reasonable inference
that the plaintiff was demoted from or not given a foreman job

---

[37] To create a fact question as to relative qualifications, the
plaintiff must provide sufficiently specific reasons for his
opinions.   Mere speculation will not suffice.   While work
experience is one component of determining who is more qualified,
greater experience alone will not be sufficient to raise a fact
question as to whether one person is clearly more qualified than
another. *Nichols v. Loral Vought Systems Corp.*, 81 F.3d 38, 41- 42
(5th Cir. 1996).

[38]      [A] plaintiff may survive summary judgment and
          take his case to the jury by providing
          evidence that he was "clearly better
          qualified" than the employee selected for the
          position at issue.   The single question for
          the trier of fact is whether the employer's
          selection of a particular applicant over the
          plaintiff was motivated by discrimination, and
          evidence of the plaintiff's superior
          qualification is thus probative of pretext.
          However, the bar is set high for this kind of
          evidence because differences in qualifications
          are generally not probative evidence of
          discrimination unless those disparities are
          "of such weight and significance that no
          reasonable person, in the exercise of
          impartial judgment, could have chosen the
          candidate selected over the plaintiff for the
          job in question." (citations omitted).
*Celestine v. Petroleos de Venezuela SA*, 266 F.3d 343, 356-357 (5th
Cir. 2001).

because of his race.

These same deficiencies in the evidence are also fatal to the plaintiff's retaliation claim.  Assuming the plaintiff engaged in protected conduct and was subject to an adverse employment action, there is no evidence to support a reasonable inference that the plaintiff was demoted from a foreman position prior to moving to Leveraged Services.  Likewise, there is no evidence to support a reasonable inference that the plaintiff was not awarded a foreman job to retaliate against him for opposing discrimination or participating in a charge of discrimination.  Plaintiff's personal belief that retaliation for his complaints of race discrimination was one of the reasons the defendant did not put him in a foreman position is insufficient to create a genuine dispute for trial. Plaintiff has no specific evidence to dispute the circumstances and reasons for his transfer to Leveraged Services, to show that he was clearly better qualified than others who were made foreman, to connect the denial of any foreman position to his complaints of race discrimination, or to otherwise demonstrate that but for his protected conduct he would have remained or been named a foreman.[39] Defendant is entitled to summary judgment on this aspect of the plaintiff's retaliation claim.

---

[39] *See*, footnote 38, *supra*, and plaintiff depo., pp. 81, 135-36, 139-40, 192-93, 275, 277, 283-89.

Denial of Overtime

Plaintiff also claimed that beginning in late 2003, after his transfer to the Leverage Services Department, he was denied overtime because of his race and in retaliation for voicing complaints about this discrimination to his supervisors and the EEOC.    Review   of   the   summary   judgment   record   as   a   whole demonstrates that these claims are unsupported.    Simply put, the plaintiff   failed   to   come   forward   with   evidence   to   dispute   the defendant's   nondiscriminatory,   nonretaliatory   reasons   for restricting   the   plaintiff's   overtime   in   the   Leveraged   Services Department,[40] or any specific evidence to show that he was similarly situated to the white employees who he contended were allowed to work overtime whenever they wanted.[41]    Nor did the plaintiff offer any evidence to dispute that during his employment in Leveraged Services he has worked some overtime, and that there have been instances where he has been offered overtime that he has declined to work.[42]

_____

[40] Landry   affidavit,   ¶   1-9,   Mancuso   affidavit,   ¶   1,   3-8. Plaintiff   did   not   dispute   that   the   overtime   restriction   in   the Leveraged   Services   Department   was   explained   to   him   on   numerous occasions.   Defendant Statement of Material Facts, ¶ 19; Plaintiff Statement of Contested Facts, ¶ 19; plaintiff depo., pp. 123-24.

[41] Plaintiff affidavit, ¶ 40-44, 50-51, 60; plaintiff depo., pp.   128-30,   154-74,   219-24,   227-31,   236-39,   281-82;   Johnson affidavit,   ¶   1-9;   13-17;   Landry   affidavit,   ¶   11;   Landry supplemental affidavit, ¶ 11a-j.

[42] Plaintiff affidavit, ¶ 41-42, 52; Landry affidavit, ¶ 10;
(continued...)

31

Presumably in support of his retaliation claim, the plaintiff relied on a statement in his affidavit that in a meeting with management about the denial of overtime, Mack Hayes pressured him to sign a statement that he did not want to work overtime. Plaintiff stated that when he refused to sign, Hayes became angry, jerked him around and told him that if he told anyone about the meeting he would be fired.[43]  However, it is undisputed that the plaintiff was not fired after this meeting and went on to file his EEOC charge on April 20, 2004.  This meeting occurred in 2004 before the plaintiff filed his charge of discrimination, and the plaintiff failed to come forward with any evidence that this action was connected to any complaints that he had made to Hayes or anyone else about race  discrimination.[44]  In light of the uncontested facts, plaintiff's statement about this meeting is insufficient to establish an adverse employment action, or a reasonable inference that but for the plaintiff's engaging in protected activity he would not have been subjected to this action by Hayes.

Once again, the plaintiff's own personal belief that his overtime work was restricted and/or denied because of his race, or because he complained about discrimination and filed an EEOC

---

[42](...continued)
Landry supplemental affidavit, ¶ 10a-o.

[43] Plaintiff affidavit, ¶ 49.

[44] Plaintiff depo., pp. 80, 125, 128, 135-36, 283-86.

32

charge, is insufficient to create a genuine dispute for trial. Based on the undisputed facts and the plaintiff's failure to come forward with sufficient specific evidence to support these claims, a reasonable trier of fact could not find that the plaintiff's race or retaliation motivated the defendant's decision with regard to the amount of overtime that the plaintiff was allowed to work.

### November 2002 Suspension

Plaintiff asserted that in November 2002, shortly after complaints to Watts and supervisor Willie Lefever that he was being denied foreman positions because of his race, he was suspended from work for three days without pay for a work rules violation. According to the plaintiff, three other white Class A pipefitters who were working with him and also removed bolts from the vessel, did not receive any kind of disciplinary action.[45]  Breeden stated in his affidavit that he was aware of the incident and participated in a meeting with the plaintiff and his supervisors about the incident.  Breeden explained that although other employees were involved, the plaintiff received the suspension and the other employees received warnings because the plaintiff was the one who actually performed the improper work.[46]

Plaintiff did not deny in his deposition or affidavit that he performed the work that resulted in his suspension – removing bolts

---

[45] Plaintiff affidavit, ¶ 25.

[46] Breeden affidavit, ¶ 4, exhibit A.

33

from a vessel that was not supposed to be opened.  Plaintiff also failed to offer any competent summary judgment evidence to dispute Breeden's explanation for his suspension and the warnings given to the other workers.

In his deposition the plaintiff testified that he and one other white employee actually worked on the bolt, but later stated that "three other white guys helped me to break - work on this tank."[47]  Plaintiff also testified that one of the three white employees was suspended for three days but was paid for his days.[48]  In his affidavit the plaintiff stated that he and the three white employees removed bolts from the vessel, that he was written up and suspended from work for three days without pay, but that "[n]one of the white employees received any kind of disciplinary action despite that all four had removed bolts from the vessel."[49]

These statements given by the plaintiff in his affidavit and deposition about the incident are plainly inconsistent both with regard to the actions of the other employees and the discipline they received.  It is well-established that a party cannot create a genuine factual dispute by providing such inconsistent evidence

---

[47] Plaintiff depo., pp. 182-186.

[48] *Id.* pp. 186-190.

[49] Plaintiff affidavit, ¶ 25.

on an issue.[50]  Thus, given the undisputed facts and the plaintiff's inconsistent statements, there is no evidence to support a reasonable inference that similarly situated white employees were given more favorable treatment than the plaintiff.[51]  Thus, the evidence is insufficient for a reasonable trier of fact to conclude that the defendant suspended the plaintiff for three days without pay because of his race.

Plaintiff's retaliation claim based on this incident also fails.  Plaintiff has only his statement that this suspension occurred shortly after he complained to Watts and Lefever that he was being denied foreman positions because of his race.  Given the plaintiff's failure to present adequate evidence to dispute the defendant's reasons for the suspension, this timing alone is insufficient to for a reasonable trier of fact to conclude that the disciplinary action was motivated by unlawful retaliation.

Pipefitter's Test and 2005 Audits

Plaintiff also alleged unfair treatment on the basis of race

---

[50] It is well settled that a plaintiff's affidavit that does not supplement, but impeaches without explanation his earlier deposition testimony, is insufficient to create a summary judgment issue. *See*, *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996); *Taylor v. Coastal Securities, Ltd.*, 45 Fed.Appx. 326 (5th Cir. 2002); *Lopez v. Tyler Refrigeration*, 207 F.3d 657, n. 7 (5th Cir. 2000).

[51] In disparate treatment cases, the plaintiff-employee must show nearly identical circumstances for employees to be considered similarly situated.  *Berquist v. Washington Mut.* Bank, ____ F.3d ____, 2007 WL 2460350 (5th Cir. 2007); *Perez v. Texas Dept. of Criminal Justice*, 395 F.3d 206, 210 (5th Cir. 2004).

and retaliation with regard to delay in receiving his pipefitter's card and audits by team leader Paul Lewis beginning in February 2005.[52]  Accepting and viewing the plaintiff's evidence in the light most favorable to the plaintiff, the evidence fails to establish a genuine dispute for trial on two essential elements of these claims.  The evidence as a whole is insufficient to find that the plaintiff experienced an adverse employment action, or that the defendant's actions were based on race or retaliation.

Plaintiff asserted that in January 2005, Breeden and Mike Phelps came to Dow to investigate race discrimination allegations by another black employee, and they told Patrick Morris that the plaintiff was a troublemaker and organizer against the company who was convincing other black employees to file suit.  Plaintiff claimed that less than a month after this event Lewis began to audit him on the job at least once and sometimes twice a week, and that Lewis continued to audit him on a weekly basis for eight to ten months.  Plaintiff stated that the company rules "call for" audits once a month, and he complained to Landry about the audits.  According to the plaintiff, Landry told him to get ready because he would be audited more and he could write that in his "little black

---

[52] It is unclear whether the plaintiff is asserting both race discrimination and retaliation based on these allegations.  In his memoranda the plaintiff only discussed this incident in terms of his retaliation claim.  For purposes of this motion, it is assumed that the plaintiff is making both claims.

book."[53]

Defendant presented evidence that the audits resulted from a routine audit by Lewis which revealed problems with the way the plaintiff completed his reports, and that Lewis routinely conducts such audits twice a week.[54]  This legitimate reason for the audit, including its timing and frequency, is uncontradicted by the plaintiff.  The fact that the company rules only require audits once a month does not contradict either the reason for the plaintiff's audit or Lewis' routine practice.  Although the plaintiff asserted that he was audited more frequently than others, he failed to present any competent summary judgment evidence to support this belief, or any evidence that he was treated more harshly than similarly situated white employees or employees who did not complain about discrimination.

Nor did the plaintiff come forward with any evidence that the audits interfered with his ability to do his job, or resulted in any disciplinary action, demotion, or reduction in his pay. Plaintiff has only the timing of the audits and Landry's alleged statement to support his claims with regard to this incident.  In light of the undisputed facts, this evidence is insufficient to support a reasonable inference that the audits constitute an

---

[53] Plaintiff affidavit, ¶ 76-77; plaintiff depo., pp. 225-27; Johnson affidavit, ¶ 18-19.

[54] Landry affidavit, ¶ 14.

37

adverse employment action, or an action that might have deterred a reasonable worker from making or supporting a charge of discrimination, or that the audits were based on race or retaliation.

Similar reasoning supports the defendant's summary judgment motion with regard to the delay in the plaintiff receiving his pipefitter's card. Defendant presented uncontradicted evidence that the plaintiff was tested in early 2003 by Robert Brouillette. This was shortly after Dow instituted mandatory testing for all those holding the classification of Pipefitter A. Plaintiff did not receive his certification card after the testing. When the plaintiff contacted Breeden in April 2004 about never receiving his card, Breeden investigated and found the plaintiff's test results in Brouillette's testing manual. It appeared that the plaintiff had not completed the test. Plaintiff was initially told that he would have to retake the test. After discussing the situation further with Willie LeFever, Breeden decided that because the plaintiff had been told by Brouillete that he had passed the test, the plaintiff would not be required to take the test again. Breeden stated that the plaintiff has never been required to retest, and has never lost his classification, or any pay, position or work assignment because of the problem with receiving his

pipefitter's card.[55]

Plaintiff did not offer any evidence to dispute any of these facts. In support of his claim the plaintiff relied only on his personal belief that he felt he did not get his card because of his race and retaliation, and the statements in his affidavit that he had repeatedly asked for his card and Brouillette had told him that Brent Watts said to fail him.[56] However, this latter statement in the plaintiff's affidavit contains no evidence as to when the statement was allegedly made. Without such facts there is no basis to conclude that the delayed receipt of his certification card was retaliation for the plaintiff's complaints about discrimination or the filing of his EEOC charge. In light of the undisputed facts, this evidence is wholly insufficient to support a reasonable inference that the plaintiff was denied his pipefitter certification card because of retaliation or race discrimination.

Since it is undisputed that the plaintiff did not experience any adverse consequences in the terms, conditions, or privileges of his employment as a result of the problems in getting his pipefitter certification card, there is also no evidence such that a reasonable trier of fact could conclude that this incident constitutes an ultimate adverse employment action, or an action

---

[55] Defendant Statement of Material Facts, ¶ 22-24; Breeden affidavit, ¶ 9-12; plaintiff depo., pp. 84-92.

[56] Plaintiff depo., pp. 91-92; plaintiff affidavit, ¶ 27-29, 31, 33.

that would have dissuaded a reasonable worker from making or supporting a charge of discrimination.[57]

<u>Other Alleged Acts of Discrimination/Retaliation</u>

Plaintiff also alleged other incidents in which he claims that defendant took actions against him that were either motivated by race or retaliation: requiring him to retest on the forklift and get a medical clearance to return to work, denial of salary retention incentive, denial of a key and a pager, and changing the location for his lunch break.  It is unclear from the record whether the plaintiff is contending that all of these events constitute adverse employment actions under Title VII and § 1981, and whether he is claiming both race discrimination and retaliation based on these events.  Therefore, for the purposes of this motion it will be assumed that these alleged actions are adverse employment actions and that the plaintiff is making both claims.

Defendant presented evidence of legitimate, nondiscriminatory, nonretaliatory reasons for these actions.  Through the affidavits of Breeden and Landry, the defendant established that the January 2006 salary retention was only offered to certain categories of employees and the department in which the plaintiff worked,

---

[57] Plaintiff testified that the situation with his card aggravated him and put him through stress and strain.  Plaintiff depo., p. 85.  Plaintiff clearly was not dissuaded by the incident because shortly after it occurred he filed his EEOC charge and included it as one of the grounds for his charge of discrimination.

Leveraged Services, was not included.[58]  Plaintiff presented no evidence to dispute this statement and has only his own personal belief that not giving him this salary retention incentive was discriminatory.[59]

With regard to the forklift test, Mancuso stated in her affidavit that in August 2003 a Dow Chemical representative, Don Neahusan, observed the plaintiff operating a forklift.  Neahusan expressed concerns about the plaintiff's ability and asked that the plaintiff's performance be assessed; the defendant complied.[60] Again, the plaintiff has nothing to dispute this evidence, and no evidence that any similarly situated white employees were treated more favorably.  Plaintiff has only his personal belief that the defendant's actions were based on race and retaliation.[61]

Plaintiff's complained that because of his race and retaliation he was denied a key, a pager and a radio and was required to take his lunch break in an inconvenient location. Defendant submitted evidence through Landry's affidavit which established that after the plaintiff informed Landry that he did

---

[58] Breeden affidavit, ¶ 13, exhibit B; Landry affidavit, ¶ 16.

[59] Plaintiff depo., pp. 176-81.

[60] Mancuso affidavit, ¶ 10.

[61] Plaintiff depo., pp. 146-50.

not have a key and needed a radio or pager for safety reasons,[62] Landry provided him with a key and a radio.  Landry also explained in his supplemental affidavit why the place designated for the plaintiff to eat his lunch was different than that of Adam Johnson.[63]

Plaintiff did not offer any evidence to dispute the defendant's explanations.  Plaintiff acknowledged that as soon as he asked for them Landry gave him a key and a radio.  Plaintiff also acknowledged the fact that other white employees eat lunch in the same building as he does.  Plaintiff conceded that another black employee had a key to the building.  It is undisputed that the person the plaintiff compares himself to, Adam Johnson,[64] is the same race as the plaintiff.  Arguably, the only evidence which could support the plaintiff's claims as to these events is the plaintiff's testimony that Landry was aware for months that the plaintiff did not have a key to the building.[65]  However, in light of the undisputed facts, this mere scintilla of evidence is

---

[62] Plaintiff testified that he was informed by Dwight Landry, an employee of Kelly Services, that Dow asked the plaintiff to turn in his pager because of a tight budget.  Plaintiff depo., pp. 268-70.  Plaintiff did not contest these facts or offer any evidence to connect this action to the defendant.

[63] Landry affidavit, ¶ 17; Landry supplemental affidavit, ¶ 12a.

[64] Johnson affidavit, ¶ 1-3.

[65] Plaintiff depo., pp. 261-74.

insufficient to support a reasonable inference that any of these actions were motivated by race or retaliation.

Plaintiff claimed that he was retaliated and discriminated against because he was required to get a doctor's note to return to work, and white employees were not subject to the same requirement. Defendant pointed to the affidavit of Landry, the plaintiff's supervisor.  Landry stated that when the plaintiff had an elbow problem in December 2005 he was asked to get a doctor's clearance before returning to work.  In January 2006 the plaintiff was required to get a fitness for duty exam because he had submitted medical information from an eye doctor that he could not conduct safety meetings because of vision problems.  Landry explained that these actions were routine and taken to determine whether the plaintiff could safely perform his job duties.[66]

Again, the plaintiff's statements and testimony fail to create a genuine dispute for trial.  Plaintiff did not present any evidence to challenge the defendant's nondiscriminatory and nonretaliatory reason for requiring the medical clearance.  While the plaintiff stated in his affidavit that he never submitted medical information that he could not attend safety meetings, this does not contradict Landry's statement that the exam was needed because the information from the plaintiff's eye doctor indicated that the plaintiff could not conduct safety meetings.  Plaintiff

---

[66] Landry affidavit, ¶ 15.

43

pointed to white employees who he claimed did not have to get doctor excuses or medical clearance, but did not come forward with any evidence to support a reasonable inference that any disparate treatment was involved, i.e., that his circumstances were similar to those individuals he named.[67]  Plaintiff has failed to present evidence from which a reasonable trier of finder could infer that race or retaliation was a factor in the defendant's decision to require that upon the plaintiff's return to work he provide medical information on the condition of his elbow and vision.

Hostile Environment and Whistleblower Claims

It is unclear from the plaintiff's memoranda whether the plaintiff is alleging a separate claim for a hostile work environment based on race or retaliation.  Plaintiff did not cite or discuss any of the legal standards governing hostile environment claims.  Nor did he address the defendant's argument that he cannot establish that any actions he alleges affected the terms, conditions, or privileges of his employment.

Assuming the plaintiff is asserting these claims, and that a retaliation-based hostile environment claim can legally exist,[68] the defendant is also entitled to summary judgment.  As an essential

_____

[67] Plaintiff depo., pp. 136-40; plaintiff affidavit, ¶ 74, 75.

[68] In the wake of *Burlington Northern,* the Fifth Circuit has not decided yet whether to recognize a retaliatory hostile work environment claim.  *Bryan v. Chertoff*, 217 Fed.Appx. 289 (5th Cir. 2007).

element of the hostile environment claims, the plaintiff would have to prove the harassment was based on his race or retaliation.[69] Plaintiff failed to present sufficient summary judgment evidence to support his claim that the defendant's actions were based on race or retaliation.  This necessarily means that the plaintiff cannot support these essential elements of a hostile environment claim.

Similarly, the defendant is entitled to summary judgment as to any claim alleged under Louisiana's whistleblower statute.  In order to recover under this statute the plaintiff must prove that the defendant/employer committed an actual violation of state law. Plaintiff cannot satisfy this requirement.  Since the defendant is entitled to summary judgment on all of the federal and state law discrimination and retaliation claims alleged by the plaintiff, there is no violation of state law that can support the whistleblower claim under LSA-R.S. 23:967.

## Recommendation

It is the recommendation of the magistrate judge that the Motion for Summary Judgment filed by defendant JE Merit Constructors, Inc. be granted.

Baton Rouge, Louisiana, September 26, 2007.

Stephen C. Riedlinger

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

---

[69] *Felton v. Polles*, 315 F.3d 470, 483-84 (5th Cir. 2002).

45